UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
AT LEXINGTON

CIVIL ACTION NO. 14-365-DLB

STACY CAREY                                                                                  PLAINTIFF

vs.                          **MEMORANDUM OPINION AND ORDER**

CAROLYN W. COLVIN,
**Commissioner of Social Security**                                 DEFENDANT

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

Plaintiff brought this action pursuant to 42 U.S.C. § 405(g) to obtain judicial review of an administrative decision of the Commissioner of Social Security. The Court, having reviewed the record, will affirm the Commissioner's decision, as it is supported by substantial evidence.

**I. FACTUAL BACKGROUND AND PROCEDURAL HISTORY**

Plaintiff Stacy Carey filed her current application for Disability Insurance Benefits ("DIB") payments, alleging disability as of June 1, 2011. (Tr. 161-73). Plaintiff's claim was denied initially and on reconsideration. (Tr. 97-100 and 108-10). On April 4, 2013, Administrative Law Judge Jonathan Stanley conducted an administrative hearing at Plaintiff's request. (Tr. 36-79). ALJ Stanley ruled that Plaintiff was not entitled to benefits on April 19, 2013. (Tr. 20-35). This decision became the final decision of the Commissioner when the Appeals Council denied review on August 21, 2013. (Tr. 1-6).

On September 11, 2014, Plaintiff filed the instant action. (Doc. # 1). This matter has culminated in cross motions for summary judgment, which are now ripe for the Court's review. (Docs. # 9, 10 and 12).

## II.  DISCUSSION

### A.  *Overview of the Process*

Judicial review of the Commissioner's decision is restricted to determining whether it is supported by substantial evidence and was made pursuant to proper legal standards. *See Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994). "Substantial evidence" is defined as "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* Courts are not to conduct a *de novo* review, resolve conflicts in the evidence, or make credibility determinations. *Id.* Rather, we are to affirm the Commissioner's decision, provided it is supported by substantial evidence, even if we might have decided the case differently. *See Her v. Comm'r of Soc. Sec.*, 203 F.3d 388, 389-90 (6th Cir. 1999).

The ALJ, in determining disability, conducts a five-step analysis. Step 1 considers whether the claimant is still performing substantial gainful activity; Step 2, whether any of the claimant's impairments are "severe"; Step 3, whether the impairments meet or equal a listing in the Listing of Impairments; Step 4, whether the claimant can still perform his past relevant work; and Step 5, whether significant numbers of other jobs exist in the national economy which the claimant can perform. As to the last step, the burden of proof shifts from the claimant to the Commissioner. *See Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 474 (6th Cir. 2003); *Preslar v. Sec'y of Health & Human Servs.*, 14 F.3d 1107, 1110 (6th

Cir. 1994).

## B.   *The ALJ's Determination*

At Step 1, the ALJ found that Plaintiff has not engaged in substantial gainful activity since the alleged onset date. (Tr. 25).  At Step 2, the ALJ determined that Plaintiff has the following severe impairments: (1) degenerative disc disease lumbar spine, status post fusion surgery with rods at L4-5 and L5-S1; (2) minimal degenerative joint disease hips bilaterally with history of right greater trochanteric bursitis; and (3) history of neck pain with bilateral shoulder pain.  (*Id.*).

At Step 3, the ALJ concluded that Plaintiff does not have an impairment or combination of impairments listed in, or medically equal to, an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1.  (Tr. 26).  Specifically, the ALJ found that Plaintiff's impairments do not meet or equal Listing 1.02 (major dysfunction of a joint), Listing 1.04 (spine disorders) or any other subsections of Listing 1.00 (musculoskeletal system) because "there is no current evidence of nerve root compression or neurological deficit." (*Id.*).

At Step 4, the ALJ concluded that Plaintiff has the residual functional capacity ("RFC") to perform less than the full range of light work, as defined in 20 C.F.R. §§ 404.1567(b), 416.967(b) ; that is:

> The claimant can perform work at the light exertional level except she can occasionally push and pull; can occasionally climb stairs and ramps, but cannot climb ropes, ladders and scaffolds; can occasionally balance, stoop, kneel, crouch and crawl; can occasionally reach overhead bilaterally; must avoid concentrated exposure to extreme cold and vibration; and cannot work at unprotected heights or around hazards such as heavy equipment.

(Tr. 26-27).  The ALJ further noted that Plaintiff is unable to perform past relevant work.

3

(Tr. 29).

Accordingly, the ALJ proceeded to the final step of the sequential evaluation. At Step 5, the ALJ found that there are a significant number of jobs in the national economy that Plaintiff could perform. (Tr. 30). The ALJ based this conclusion on testimony from a vocational expert ("VE"), in response to a hypothetical question assuming an individual of Plaintiff's age, education, work experience, and RFC. (*Id.*). The VE testified that a hypothetical individual with Plaintiff's vocational profile and RFC could find light unskilled work as counter clerk (5,070 Kentucky/391,000 nationally), bench assembly (2,700 Kentucky/272,000 nationally) or grading/sorting (3,100 Kentucky/360,000 nationally). (*Id.*). Based on the testimony of the VE and Plaintiff's age, education, work experience, and RFC, the ALJ found that Plaintiff is capable of making a successful adjustment to other work and thus concluded that she was not under a "disability," as defined by the Social Security Act. (Tr. 31).

### C.    Plaintiff's Argument

Plaintiff complains that the ALJ mischaracterized the evidence in the record in two ways: (1) misstating the results of Plaintiff's lumbar spine MRI to reflect no severe spinal stenosis; and (2) misstating the amount of care Plaintiff received after the onset of disability and discounting her credibility on that basis. Plaintiff contends that these errors resulted in an RFC that is not supported by substantial evidence. The Court will address each of these concerns in turn.

At Step 4, the ALJ must assess the claimant's residual functional capacity, which is defined as the most the claimant can still do despite his or her limitations. 20 C.F.R. § 404.1545(a)(1). In rendering this assessment, the ALJ must consider all relevant medical

4

evidence in the case record. *Id.* The ALJ uses the claimant's RFC to determine whether he or she can perform past relevant work. 20 C.F.R. § 404.1520(e)-(g). If the claimant is still able to perform past relevant work, the ALJ must find that he or she is not disabled. *Id.* If the claimant is unable to perform such work, then the ALJ must proceed to Step 5, which focuses on whether the claimant's impairments prevent him or her from making an adjustment to any other work. *Id.*

In addition to medical evidence, the ALJ must "consider all [the claimant's] symptoms, including pain, and the extent to which [his or her] symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence." 20 C.F.R. § 404.1529(a). This is essentially a two-step inquiry. *See* Soc. Sec. Rul. 96-7p, 1996 WL 374186, at *1. First, the ALJ must consider whether "there are medical signs and laboratory findings demonstrating the existence of a medically determinable physical or mental impairment(s) that could reasonably be expected to produce the symptoms." *Id.* Once that is established, the ALJ must evaluate "the intensity, persistence, and functionally limiting effects of the symptoms" and "determine the extent to which the symptoms affect the individual's ability to do basic work activities." *Id.*

Because an individual's statements about symptoms and their effects "sometimes suggest a greater level of severity of impairment than can be shown by the objective medical evidence alone," the ALJ must consider the following factors in addition to the objective medical evidence when assessing the credibility of an individual's statements: (1) the individual's daily activities; (2) the location, duration, frequency, and intensity of the individual's pain or other symptoms; (3) factors that precipitate and aggravate the symptoms; (4) the type, dosage, effectiveness, and side effects of any medical the

5

individual takes or has taken to alleviate pain or other symptoms; (5) treatment, other than medication, the individual receives or has received for relief of pain or other symptoms; (6) any measures other than treatment the individual uses or has used to relieve pain or other symptoms; and (7) any other factors concerning the individual's functional limitations and restrictions due to pain or other symptoms. *Id.* at *3.

The ALJ began his Step 4 analysis by describing Plaintiff's symptoms, gleaned from her testimony at the administrative hearing:

> The claimant entered the hearing room walking with a limp and a pillow. She sat on the pillow but moved quickly when she entered and sat without difficulty. She was cheerful and laughing. She alternated between sitting and standing every 10 minutes . . . She testified she feels like somebody hits her in the back and she has pain in both legs, worse in the right. Her feet tingle all the time. It hurts to sit straight up. She has to grab hold of the table to stand and sit to relieve pressure off her back. Her legs and back hurt when she stands. . . She testified that she uses a cane at times, but she did not have a can at hearing, but said it was in the care. She takes no pain medication because her doctors will not give it to her. She takes 12 to 16 Ibuprofen pills a day with little benefit. She also uses a heating pad and takes hot showers or hot baths and lays on a heating pad two or three times a day.

(Tr. 27, 36-78).

He then detailed all of the medical evidence in the record, including the following treatment note from James B. Haggin Memorial Hospital:

> A Magnetic Resonance Imaging of the lumbar spine on June 28, 2012, revealed status post anterior and posterior fusion at L4-S1 with a severe right-sided neural foraminal stenosis secondary to facet hypertrophy. L5-S1 was difficult to assess due to artifact. No significant spinal stenosis was identified. There was no evidence of recurrent disc herniation. The vertebral bony [sic] heights and disc spaces were well-maintained.

(Tr. 28, 332). After comparing Plaintiff's symptoms against the medical evidence in the record, the ALJ concluded that Plaintiff's medically determinable impairments could

reasonably be expected to cause the alleged symptoms. (Tr. 28-29).

However, the ALJ found that Plaintiff's statements concerning the intensity, persistence and limiting effects of these symptoms were not entirely credible. (Tr. 29). He reached this conclusion by analyzing Plaintiff's subjective complaints using the factors identified in Social Security Ruling 96-7p. (*Id.*). After laying out these factors, the ALJ provided the following analysis, which includes frequent references to evidence detailed earlier in his decision:

> The claimant has a history of low back pain and fusion surgery in August 2009. She also has had intermittent complaints of hip pain, neck pain, and bilateral shoulder pain with only conservative treatment. AT hearing, the claimant represented herself physically to be in severe pain throughout the hearing. However, she has not sought medical treatment or prescription or pain medication since 2010, even though her husband is employed. In February 2012, she has a pretty normal consultative examination, other than radiculopathy of the left lower extremity (Exhibit 4F). In addition, a MRI of the lumbar spine on June 28, 2012, revealed surgical changes of the lower lumbar spine with no evidence of recurrent disc herniation or significant spinal stenosis (Exhibit 8F). The claimant's testimony was dramatic. She testified she has no ans for the future. She testified she has not driven alone in two years, but in a Function Report on February 27, 2012 she reported she drives. She testified she takes no trips. She does not visit family like she used to. She testified she is unable to even watch television or read a book due to pain. The claimant has claimant [sic] stated she showers, prepares simple meals such as sandwiches or a bowl of cereal, stores, reads, watches television, pays bills using a checkbook/money orders, and she visits family members a couple times a week (Exhibit 8E). No physician of record has ever said that she is unable to perform any type of work.
> The Administrative Law Judge has also considered the opinions of state agency medical consultants and program physicians that the claimant's impairments are less than severe but she can perform a reduced range of light work.
>
> As for the opinion evidence, no physician of record has ever said the claimant is disabled.
>
> Great weight is accorded to the opinion of the consultative examiner at Exhibit 4F.

7

> In sum, the above residual functional capacity assessment is supported by the totality of the objective medical evidence of record, diagnostic testing, the consultative examination at Exhibit 4F, and the claimant's activities of daily living as reported in Exhibit 8E.

(Tr. 29).

Out of this exhaustive analysis, Plaintiff takes issue with the ALJ's restatement of two pieces of evidence: (1) the ALJ's statement that "a MRI of the lumbar spine on June 28, 2012, revealed surgical changes of the lower lumbar spine with no evidence of recurrent disc herniation or significant spinal stenosis;" and (2) his statement that Plaintiff "has not sought medical treatment or prescription or pain medication since 2010, even though her husband is employed." (*Id.*). Although Plaintiff concedes that the ALJ correctly summarized the evidence earlier in his Step 4 analysis, she insists that his subsequent misstatement of this evidence undermined the validity of his entire RFC assessment.

Admittedly, the ALJ could have been more careful in summarizing the evidence already discussed. After all, the MRI showed no significant spinal stenosis at L5-S1, but there was severe right-sided neural foraminal stenosis at L4-S1. (Tr. 332). It also appears that Plaintiff sought some treatment for pain after 2010, as evidenced by the MRI performed on June 28, 2012. (*Id.*). However, these inaccuracies do not automatically lead to the conclusion that the ALJ's decision is unsupported by substantial evidence.

If the misstated evidence were the sole basis for the ALJ's Step 4 findings, perhaps Plaintiff's argument would have merit. However, these two sentences were but a small part of the extensive analysis quoted above. The ALJ also relied upon Plaintiff's conservative treatment regimen, "pretty normal" consultative examination, dramatic hearing testimony and Function Report detailing her activities of daily living. These sources all suggest that

8

Plaintiff "was not credible with regard to her allegations that she is unable to perform any type of work." (*Id.*). Thus, the Court finds that the ALJ's credibility assessment and ultimate RFC finding are supported by substantial evidence, despite the liberties taken in restating these two pieces of evidence. Because remand would be "an idle and useless formality," the Court will affirm the Commissioner's decision. *Kobetic v. Comm'r of Soc. Sec.*, 114 F. App'x 171, 173 (6th Cir. 2004) (quoting *NLRB v. Wyman-Gordon Co.*, 394 U.S. 759, 766 n.6 (1969)); *see also Fisher v. Bowen*, 869 F.2d 1055, 1057 (7th Cir. 1989) ("No principle of administrative law or common sense requires us to remand a case in quest of a perfect opinion unless there is reason to believe that remand might lead to a different result.").

### III.  CONCLUSION

Accordingly, for the reasons stated herein, **IT IS ORDERED** as follows:

(1)   The decision of the Commissioner is found to be supported by substantial evidence and is hereby **AFFIRMED**;

(2)   Plaintiff's Motion for Summary Judgment (Doc. # 9) is hereby **DENIED**;

(3)   Defendant's Motion for Summary Judgment (Doc. # 10) is hereby **GRANTED.**

A Judgment in favor of Defendant Commissioner will be entered contemporaneously herewith.

This 3rd day of July, 2015.



Signed By:
*David L. Bunning*   DB
United States District Judge

G:\DATA\SocialSecurity\MOOs\Lexington\14-365 Carey MOO.wpd